[No. C038058. Third Dist. June 17, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
IVAN EDWARD COCKBURN, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, and IV of the DISCUSSION.

COUNSEL

Law Office of R. Bruce Finch and R. Bruce Finch for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stephen G. Herndon and Alison Elle Alemán, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMS, Acting P. J.—An information charged defendant Ivan Edward Cockburn with kidnapping (Pen. Code, § 207, subd. (a), count 1; undesignated section references are to this code); felony child abuse (§ 273a, subd. (a), count 2); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1), count 3); and brandishing a deadly weapon, to wit, a knife, a misdemeanor (§ 417, subd. (a)(1), count 4). In connection with

count 1 only, it was further alleged that defendant had sustained a prior serious felony conviction, to wit, battery with serious bodily injury (§§ 243, subd. (d), 667, subd. (a)).

A jury acquitted defendant on counts 3 and 4, and deadlocked on counts 1 and 2.

On retrial, the jury convicted defendant on count 2 and acquitted on count 1.[1]

Sentenced to state prison for an aggregate term of seven years (the upper term of six years for child abuse plus a consecutive one-third the midterm or one year for battery with serious bodily injury in case No. CM011006), defendant appeals, contending (1) the trial court erroneously instructed that proof of a mental state no more culpable than criminal negligence was sufficient for assaultive child abuse; (2) the trial court failed to instruct the jury sua sponte on voluntary intoxication to negate the culpable mental state required for aiding and abetting; and (3) the general child abuse statute (§ 273a) is preempted by the specific willful injury to a child statute (§ 273d) requiring reversal of his conviction.

In the published portion of the opinion, we conclude that the prosecutor could properly elect to prosecute under section 273a rather than section 273d. In the unpublished portion of the opinion, we reject defendant's other contentions of prejudicial error. We shall therefore affirm the judgment.

### FACTS

The 15-year-old victim lived with his father in an apartment in Chico. On the evening of November 19, 1999, defendant, Lucas Ruggles, and Ruggles's brother visited the victim at the apartment. The victim's older brother Josh was also present. They all drank beer. Josh's friend Jarod joined them later. They went next door to visit Jennifer P. and drank some more beer. The victim believed that defendant and Ruggles were intoxicated because of the amount of beer they had consumed and they were acting boisterously. At some point, defendant passed out. While at Jennifer P.'s apartment, Ruggles and defendant wanted $50 worth of marijuana. Josh said he could get it if they wanted it. Ruggles, Josh, and Jarod left to buy the marijuana. In about an hour, they returned. The victim saw defendant and Ruggles examining the

---

[1] The information also charged codefendant Lucas David Ruggles with the same offenses. The first jury convicted Ruggles on counts 2 and 4, and deadlocked on counts 1 and 3. On retrial, the jury convicted Ruggles on count 3 and acquitted on count 1. Ruggles appealed and this court affirmed the judgment. (*People v. Ruggles* (Sept. 24, 2002, C037984) [nonpub. opn.].)

marijuana and heard them complain about the quality. Josh offered to seek a refund but defendant and Ruggles declined. Josh and Jarod then left.

Defendant and Ruggles were still unhappy with the marijuana. Ruggles, angry and yelling, went to the victim's father's apartment seeking Josh. The victim followed Ruggles. Ruggles woke up the victim's father and the victim told his father to go back to sleep. When the victim walked outside the apartment, defendant put the victim in a headlock and took him to the ground where defendant held the victim by his throat with his boot.

Defendant and Ruggles grabbed the victim and forced him into the back seat of defendant's car. While defendant drove, Ruggles sat next to the victim and held a knife with its sharp edge towards the victim. Ruggles threatened to kill the victim if he did not show them where Josh was. While driving, defendant demanded the knife, held it towards the victim and threatened the victim. The victim directed them to Jarod's house where he thought Josh might be but was not. Defendant drove to a gravel parking lot where they all got out of the car. Defendant and Ruggles then beat, kicked and stomped the victim's head, sides and back numerous times, for about five minutes. The victim started to run away but was tackled and dragged on his back by his legs to the car where defendant and Ruggles continued to beat, kick and stomp on the victim's head and upper torso. After beating the victim, they put the victim in the backseat of the car. While defendant and Ruggles searched the parking lot for the keys to the car, the victim jumped out of the car and ran to an intersection where he flagged down a passing motorist who took the victim to his father's apartment.

Defendant and Ruggles returned to Jennifer P.'s apartment and said that they "had just beat[en] up the guy, kicked his ass, kicked him a bunch, left him for dead, beat the crap out of him."

The victim reported the incident the next day. When the victim recounted the incident to the police, he omitted the fact that Josh had purchased marijuana. He was afraid because of the threats made by defendant or Ruggles that if the victim said anything the victim's brother and father would be killed. The victim suffered several injuries on the right side of his body including cuts and abrasions to his face, ear, elbow, and a black eye. He also sustained a bump on the back of his head.

When deputy sheriffs went to defendant's residence, defendant answered the door. When the deputies asked to speak with Ivan Cockburn, defendant identified himself as Steve Walsh and advised the deputies that Ivan Cockburn had been evicted the previous month because he always got drunk and into fights and that Cockburn's car sitting in the driveway had not been

moved for about a month since Cockburn had left. The deputy sheriff saw evidence of recent movement. As he started to explain why he doubted the car had sat so long, defendant fled. Later, a police officer saw defendant walking along the sidewalk and when defendant saw the patrol car, he ran. The officer gave chase and caught him shortly thereafter.

Defendant did not testify. He called Deputy Sheriff Steve Boyd to testify. During the investigation, the victim changed his story of the events numerous times.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . .

III

 Defendant contends felony child abuse under section 273a, subdivision (a),[6] a general statute, for which he was charged and convicted, is

---

*See footnote, *ante*, page 1151.

[6]Section 273a provides: "(a) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

"(b) Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor.

"(c) If a person is convicted of violating this section and probation is granted, the court shall require the following minimum conditions of probation:

"(1) A mandatory minimum period of probation of 48 months.

"(2) A criminal court protective order protecting the victim from further acts of violence or threats, and, if appropriate, residence exclusion or stay-away conditions.

"(3)(A) Successful completion of no less than one year of a child abuser's treatment counseling program approved by the probation department. The defendant shall be ordered to begin participation in the program immediately upon the grant of probation. The counseling program shall meet the criteria specified in Section 273.1. The defendant shall produce documentation of program enrollment to the court within 30 days of enrollment, along with quarterly progress reports.

"(B) The terms of probation for offenders shall not be lifted until all reasonable fees due to the counseling program have been paid in full, but in no case shall probation be extended

preempted by corporal injury to a child under section 273d,[7] a special statute, for which he was not charged; thus, his conviction under section 273a should be reversed. We disagree.

■ Generally, prosecutors may elect to proceed under either of two statutes that proscribe the same conduct. (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1250 [265 Cal.Rptr. 144, 783 P.2d 731] (*Mitchell*).)

---

beyond the term provided in subdivision (a) of Section 1203.1. If the court finds that the defendant does not have the ability to pay the fees based on the defendant's changed circumstances, the court may reduce or waive the fees.

"(4) If the offense was committed while the defendant was under the influence of drugs or alcohol, the defendant shall abstain from the use of drugs or alcohol during the period of probation and shall be subject to random drug testing by his or her probation officer.

"(5) The court may waive any of the above minimum conditions of probation upon a finding that the condition would not be in the best interests of justice. The court shall state on the record its reasons for any waiver."

[7]On November 19, 1999, when defendant committed his crime, section 273d provided: "(a) Any person who willfully inflicts upon a child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition is guilty of a felony and shall be punished by imprisonment in the state prison for two, four, or six years, or in a county jail for not more than one year, by a fine of up to six thousand dollars ($6,000), or by both that imprisonment and fine.

"(b) Any person who is found guilty of violating subdivision (a) shall receive a four-year enhancement for a prior conviction of that offense provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense that results in a felony conviction.

"(c) If a person is convicted of violating this section and probation is granted, the court shall require the following minimum conditions of probation:

"(1) A mandatory minimum period of probation of 36 months.

"(2) A criminal court protective order protecting the victim from further acts of violence or threats, and, if appropriate, residence exclusion or stay-away conditions.

"(3)(A) Successful completion of no less than one year of a child abuser's treatment counseling program approved by the probation department. The defendant shall be ordered to begin participation in the program immediately upon the grant of probation. The counseling program shall meet the criteria specified in Section 273.1. The defendant shall produce documentation of program enrollment to the court within 30 days of enrollment, along with quarterly progress reports.

"(B) The terms of probation for offenders shall not be lifted until all reasonable fees due to the counseling program have been paid in full, but in no case shall probation be extended beyond the term provided in subdivision (a) of Section 1203.1. If the court finds that the defendant does not have the ability to pay the fees based on the defendant's changed circumstances, the court may reduce or waive the fees.

"(4) If the offense was committed while the defendant was under the influence of drugs or alcohol, the defendant shall abstain from the use of drugs or alcohol during the period of probation and shall be subject to random drug testing by his or her probation officer.

"(5) The court may waive any of the above minimum conditions of probation upon a finding that the condition would not be in the best interests of justice. The court shall state on the record its reasons for any waiver." (Stats. 1997, ch. 134, § 2.)

Defendant cites inter alia *People v. Jenkins* (1980) 28 Cal.3d 494, 501-502 [170 Cal.Rptr. 1, 620 P.2d 587] (*Jenkins*), for the proposition that (1) where a general statute standing alone would include the same matter as a special statute, and thus conflict with it, the special act will be considered as an exception to the general statute, regardless of which was enacted first, and (2) the prosecution lacks power to prosecute under the general statute where the alleged facts parallel the acts proscribed by the more specific statute.

██ "[W]here [a] general statute standing alone would include the same matter as [a] special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593] (*Williamson*); see also *Jenkins, supra*, 28 Cal.3d 494, 501 [claim that the AFDC (Aid to Families with Dependent Children) fraud statute precluded prosecution under perjury statute rejected based on legislative intent to permit prosecutions to proceed under either statute]; *People v. Superior Court (Duval)* (1988) 198 Cal.App.3d 1121, 1135-1137 [244 Cal.Rptr. 522] [a consensual act of intercourse alone cannot sustain a former § 273a, subd. (1) (now § 273a, subd. (a)) charge where § 261.5 (unlawful sexual intercourse) is the specific statute intended by the Legislature to cover the conduct and takes precedence]; *People v. Hawes* (1982) 129 Cal.App.3d 930, 936-941 [181 Cal.Rptr. 456] [intoxication by a public officer (Gov. Code, § 3001), a special statute, evinces a legislative intent that it be treated as a distinct form of misconduct, rather than as charged, willful or corrupt misconduct in office (Gov. Code, § 3060)].)

"The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision. . . .' [Citation.]" (*Jenkins, supra*, 28 Cal.3d 494, 505-506, fn. omitted.)

██ However, the rule precluding prosecution under a general statute "is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict. [Citation.]" (*People v. Walker* (2002) 29 Cal.4th 577, 586 [128 Cal.Rptr.2d 75, 59 P.3d 150] (*Walker*), citing *Williamson, supra*, 43 Cal.3d 651, 654.) Moreover, the California Supreme Court has explained that "*Jenkins, supra*, 28 Cal.3d 494, 501-505—

merely stand[s] for the proposition that when the Legislature has enacted a specific statute addressing a specific matter, and has prescribed a sanction therefor, the People may not prosecute under a general statute that covers the same conduct, *but which prescribes a more severe penalty*, unless a legislative intent to permit such alternative prosecution clearly appears." (*Mitchell, supra*, 49 Cal.3d 1230, 1250.)

*Mitchell* observed " 'Typically the issue whether a special criminal statute supplants a more general criminal statute arises where the special statute is a misdemeanor and the prosecution has charged a felony under the general statute instead. [Citations.] Such prosecutions raise a genuine issue whether the defendant is being subjected to a greater punishment than specified by the Legislature, and the basic question for the court to determine is whether the Legislature intended that the more serious felony provisions would remain available in appropriate cases.' [Citation.]" (*Mitchell, supra*, 49 Cal.3d at p. 1250, fn. 14.)

 The general/special statute rule does not apply in this case, because the general statute, section 273a, does not provide a more severe penalty than the special statute, section 273d.

The penalties for felony violation of section 273a and section 273d are the same (including a term of two, four, or six years in state prison), with the following exceptions:

1. Where probation is granted for violation of section 273a, the minimum period of probation is 48 months, whereas the minimum period of probation for violation of section 273d is 36 months;

2. Violation of section 273d can result in imposition of a $6,000 fine, in addition to imprisonment, whereas that fine is not available for violation of section 273a;

3. A defendant convicted of violating section 273d may be subject to a four-year enhancement for a prior conviction of that offense; there is no similar enhancement provision in section 273a. (See fns. 6 & 7 at pp. 1156-1157, *ante*.)

Thus, on the one hand, section 273a provides a more severe penalty because it requires one more year of probation than section 273d. On the other hand, section 273d provides a more severe penalty in that it allows imposition of a $6,000 fine and for imposition of a four-year enhancement for a prior conviction. In our view, these competing provisions are a wash; it

is difficult to say that either section 273a or section 273d imposes the more severe penalty. If anything, section 273d would appear to impose the more severe penalties. Certainly there is nothing in the sentencing schemes of these two statutes approaching the felony/misdemeanor distinction that is the "[t]ypical[]" case calling for exclusive application of a special statute. (See *Mitchell, supra,* 49 Cal.3d 1230, 1250, fn. 14.)

Moreover, keeping in mind that the question is one of legislative intent (*Walker, supra,* 29 Cal.4th 577, 586), we cannot believe the Legislature intended to force prosecutors to. elect between these two statutes.

■ "Violation of section 273a, subdivision (a) ' "can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect." [Citation.] . . . Section 273a[, subdivision (a)] is "intended to protect a child from an abusive situation in which the probability of serious injury is great." [Citation.] "[T]here is no requirement that the actual result be great bodily injury." [Citation.]' [Citation.]" (*People v. Valdez* (2002) 27 Cal.4th 778, 784 [118 Cal.Rptr.2d 3, 42 P.3d 511].) Section 273d, however, requires the defendant to inflict a cruel or inhuman corporal punishment or injury. upon a child and the actual result is an injury resulting in a traumatic condition. (Fn. 7 at p. 1157, *ante.*)

Thus, CALJIC No. 9.36 describes "traumatic condition" as "a condition of the body, such as a wound or external or internal injury, whether of a minor or a serious nature, caused by a physical force.

" 'Corporal punishment' is that administered to the body.

"In order to prove this crime, each of the following elements must be proved:

"1. A person willfully inflicted cruel or inhuman punishment or an injury upon the body of a child; and

"2. The infliction of this punishment or this injury resulted in a traumatic condition." (See *People v. Thomas* (1976) 65 Cal.App.3d 854, 857 [135 Cal.Rptr. 644].)

■ There are many cases in which a prosecutor may be in doubt whether he or she can prove infliction of an injury *resulting in a traumatic condition.* Surely the Legislature did not intend that prosecutors must elect prosecution under section 273d, to be greeted by an acquittal (and a double

jeopardy bar to further prosecution) if the proof fails on this element. Or, if the doubtful prosecutor prosecutes under section 273a, and the evidence in fact shows injury resulting in a traumatic condition, the People are then greeted by an argument on appeal that, in hindsight, the prosecutor should have prosecuted exclusively under section 273d. That is what is going on in this case. We will not attribute this nonsensical gamesmanship to the Legislature. Rather, the context of these two statutes tenders a "powerful indication" of legislative intent that the prosecutor retains a traditional discretion to prosecute under either statute. (See *Jenkins, supra,* 28 Cal.3d 494, 502; *Mitchell, supra,* 49 Cal.3d 1230, 1252.)

The prosecutor could properly elect to prosecute this case under section 273a rather than section 273d. Defendant's contention to the contrary is not meritorious.

## IV*

. . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment to reflect 2A for violation of section 273a, subdivision (a) and 1B for violation of section 243, subdivision (d) and to forward a certified copy of the corrected abstract to the Department of Corrections.

Davis, J., and Nicholson, J., concurred.

A petition for a rehearing was denied July 14, 2003, and appellant's petition for review by the Supreme Court was denied September 17, 2003. Kennard, J., did not participate therein.

---

*See footnote, *ante*, page 1151.